# MCCARTHY *v.* HOLTMAN.

EQUITY PRACTICE AND PROCEDURE; FINAL DECREES; MECHANICS' LIENS.

In a suit in equity to enforce a mechanic's lien, a decree was passed which, after establishing complainant's claim and directing a sale of the property and payment of certain prior liens out of the proceeds and then of complainant's claim, provided that if such proceeds should be insufficient, the complainant should recover personally against the principal defendant the full amount of his claim, or so much thereof as should not have been paid by the sale, and have execution therefor as at law. The property was sold and the proceeds were insufficient to pay any part of complainant's claim. A decree was then passed, by consent of all parties, ratifying a report of the auditor to that effect and directing a distribution of the proceeds among the lienors other than the complainant, with respect of whose claim it was silent. *Held*, that the last decree was not a final decree terminating the litigation, and that complainant was entitled to execution under the first decree.

No. 1120   Submitted November 6, 1901.   Decided December 4, 1901.

HEARING on an appeal by one of several defendants from an order of the Supreme Court of the District of Columbia, in a suit to enforce a mechanic's lien, that the complainant should have execution upon a personal decree which had theretofore been rendered in the cause.          *Affirmed.*

The COURT in its opinion stated the case as follows:

The question raised in this appeal is one of practice, rather than substantive law.

On July 28, 1894, the appellee Jeremiah J. Quinn, as complainant, with one other person who does not figure in the present phase of the cause, filed a bill in equity in the Supreme Court of the District to enforce a mechanic's lien held by him against property of the appellant Dennis Mc-Carthy, who, with a corporation doing business in the District, although organized under the laws of the State of Virginia, known as "The Washington National Building and Loan Association of Washington, D. C.," and with two trustees to whom the appellant had conveyed the property as security for a loan made to him by such corporation, was made defendant to the suit. The priority of the lien of the association would seem to have been admitted by all the parties, and the amount of its claim under the deed of trust given to it was ascertained to be the sum of $3,189.35.

After answers, replication and testimony, a decree was entered on May 27, 1895, which, so far as it is necessary here to be recited, was as follows:

"It is adjudged, ordered and decreed that the complainant, Jeremiah J. Quinn, is entitled to, and he is hereby declared to have, a lien upon the real estate described in the bill of complaint filed in the above entitled cause for the sum of $1,250, with interest thereon from the 24th day of October, A. D. 1893, and for the purpose of satisfying the said lien it is hereby adjudged, ordered and decreed that said real estate be sold, and that * * * be, and they are appointed trustees to make said sale. The course and manner of their proceedings shall be as follows:

" * * * It is further adjudged, ordered and decreed that, in the distribution of the proceeds of said sale the said trustees shall first pay the costs of this suit; and shall next pay off any balance which may be found to be due to the defendant, 'The Washington National Building and Loan Association', on account of the indebtedness secured

by the deed of trust referred to in the proceedings had in this cause; and they shall next pay to said Jeremiah J. Quinn the said sum of $1,250, with interest, as aforesaid, less the sum of $399, with interest from the first day of October, 1893, which shall be paid to the complainant Samuel Ross; and the balance of said proceeds of sale, if any, shall be paid to the defendant McCarthy. In the event, however, that said real estate shall not sell for a sum sufficient to pay off and satisfy in full to the said Jeremiah J. Quinn the said sum of $1,250, with interest as aforesaid, after the payment of costs and the sum due to the said Washington National Building and Loan Association as aforesaid, then and in that event it is further adjudged, ordered and decreed that said Quinn shall recover personally against said Dennis McCarthy the said sum of $1,250, with interest as aforesaid, or so much thereof as shall not have been paid and satisfied by the sale of said real estate, and have execution therefor as at law."

The trustees, in pursuance of this decree, sold the property mentioned; and the defendant "The Washington National Building and Loan Association" became the purchaser of it for the sum of $3,600. The sale was ratified, and the cause was referred to the auditor of the court for the statement of an account. He found the costs to amount to $499.76, the amount then due to the Washington National Building and Loan Association to be $3,189.35, and the balance of the proceeds of sale applicable to the claim of the association to be $3,100.24. There was thus a balance left as yet due to the association amounting to $89.11; and there was nothing to be applied to the payment of Quinn's claim for $1,250. There was then, on November 19, 1895, an order or decree entered by agreement of all the parties, through their respective counsel, to the effect that the trustees should convey the property to the association; that the auditor's report should be confirmed; that the trustees should pay the costs of the proceeding, amounting to $499.76; that they should pay over to the association all the balance of the money in their hands, and that

the Washington National Building and Loan Association should personally recover from the defendant McCarthy the sum of $89.11, being the balance due from McCarthy to the association over and above the proceeds of the sale of the real estate, and that the association should have execution therefor as at law. This decree was wholly silent as to the claim of Quinn.

Matters seem to have rested here, so far as the record discloses, until April 16, 1901, when Quinn filed a petition in the cause for the purpose of having execution of the decree of May 27, 1895. In this petition, after recital of so much of the previous proceedings as was necessary, he alleged that, on or about October 23, 1900, other property had been conveyed to the defendant McCarthy of the value of about $4,000; and he sought to have this property subjected, by means of sale, to the payment and satisfaction of the petitioner's personal decree of May 27, 1895, against McCarthy for the sum of $1,250. A rule to show cause was issued, and McCarthy answered the rule and the petition. The burden of the answer was the alleged insanity of the respondent during the whole time of the previous proceedings, at the time at which they were instituted, and at the time at which he entered into the contract with Quinn which led to the mechanic's lien obtained and established by the latter against him.

The court below found no merit in this defense, and decreed " that said complainant, Jeremiah J. Quinn, have execution of said decree (of May 27, 1895), for the sum of $1,250, with interest from the 24th day of October, A. D. 1893, together with the costs of this proceeding, said execution to issue on said decree as at law."

From this the defendant McCarthy has prosecuted the present appeal.

*Mr. Malcolm Hufty, Mr. Mason N. Richardson* and *Mr. Lawrence Hufty* for the appellant.

*Mr. Wilton J. Lambert* and *Mr. D. W. Baker* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

·We understand that in the argument in the cause in the court below the respondent abandoned the defense of insanity, which constituted the substance of his answer to the petition, and relied entirely on technical objection to the petitioner's right at this time to have execution of the decree of May 27, 1895. The question of insanity is not brought forward before us, and we are confined to a consideration of the one assignment of error in the case, which seeks to show that the decree of May 27, 1895, was not a final decree as establishing a personal liability against the appellant; that the amount for which a personal judgment should be rendered against him has never been judicially ascertained; that the decree of November 19, 1895, whereby the auditor's report was ratified and distribution ordered of the money in the hands of the trustees, put an end to the litigation; and that the silence of this last-mentioned decree with reference to the claim of the appellee, and which was consented to by the appellee, amounted to an abandonment of the appellee's rights.

The argument in support of the appellant's position is ingenious and plausible, but it does not command our assent.

The decree of November 19, 1895, ratifying the auditor's report in this case, is in no proper sense a final decree otherwise than that it was the last decree entered in the cause. It is very true that in many cases the decree which ratifies an auditor's report constitutes the final decree which terminates the litigation and from which appeals may properly be taken. But in order to be such it must purport to be final, or be such in contemplation of law by virtue of its disposition of the whole subject-matter of litigation. A decree is said to be final when it fully decides and disposes of the whole merits of the cause, and reserves no further questions or directions for the future judgment of the court. *Cosby* v. *Buchanan*, 90 U. S. 420; *Mordecai* v. *Lindsay*, 19 How. 199; Barton's Suit in Equity, 137; Cyclopedia of Pleading and Practice, Vol. 5, p. 950. The decree in this

case of November 19, 1895, of itself settled nothing except that the auditor's report was correct, that the trustees who sold the property should distribute the proceeds of sale according to this report, and that after this distribution there was still a small balance due to the Washington National Building and Loan Association. So far as it is a finality in itself, it is so only as to the respective rights of this association and the appellant. The matters in controversy between the appellant and the appellee remain unaffected by it. Only by its silence in regard to them can these be said to be affected; and that silence implies that there were no proceeds of the sale to be applied to the payment of the claim of the appellee. A decree which affects merely the rights of two defendants to a cause, and wholly ignores the controversy between the principal defendant and the complainant, can not be said to have decided and disposed of the whole merits of the cause.

It is true that oftentimes all the equities of a controversy may have been settled by a prior decree in the cause, and there is left only an account to be stated; and in that case a decree confirmatory of an auditor's report may operate as the final adjudication of the case. But that would present a very different case from the present. There is here no accounting between the parties, but only an accounting as to a collateral matter. Here were two claimants having several demands against a third person, and each also holding liens against his property as security for the payment of the demands. By the first decree rendered in the cause, that of May 27, 1895, the right of one claimant, who was the complainant in the suit, was fully determined and its amount ascertained. Between him and the principal defendant there was no further accounting necessary. As to these two there was nothing further to be done than to enforce payment of the amount. That enforcement, under the law, was to be: (1) By devoting to it the proceeds of the sale of the property so far as they were available; (2) by a personal decree and execution thereunder. But the holder of the prior claim exhausted the security, and

there was nothing left for the other claimant.   The accounting which was had was an accounting· between the debtor and the prior claimant; and only incidentally and by implication was it an accounting between the debtor and the second claimant.   It is very clear that it did not affect the rights of these two last further than as it showed that the security was wholly inadequate to yield any sum whatever towards the satisfaction of the claim, and that the claimant was compelled to fall back on the personal liability of the debtor.  · We do not think that the decree ratifying the auditor's report has any bearing whatever on the respective rights of the appellant and the appellee, except in as far as it shows that the appellee's security for his claim was inadequate.   Further than this it determined nothing between them.   Further than this it simply left them where it found them.   They were remitted by it to the decree of May 27, 1895, with an adjudication by inference only that the contingency contemplated by that decree had in fact occurred — the contingency that the sale of the property would yield nothing or only an insufficient amount to satisfy the appellee's claim after the payment of the prior incumbrance.

The true meaning and construction of this decree of May 27, 1895, are not that it was an interlocutory decree, but a final decree suspended as to its execution by the necessity of determining how much of the security was available for its satisfaction.   The argument on behalf of the appellant goes to the effect that there should have been no personal judgment at all until it was shown that there was a deficiency, partial or total, in the security.   But even if this were the preferable course in ordinary cases, in regard to which we decide nothing, it is not apparent that it was not within the discretion of the court of equity to render the decree which it rendered here, and which is in the nature of an alternative decree, conditioned to become effective on the determination of certain conditions for the ascertainment of which provision is made in the decree itself.

That this form of decree was within the purview of the statute under which the proceedings were had, may fairly be inferred from the words of the statute itself. The mechanics' lien act of July 2, 1884 — 23 Stat. 64 — provides in its fifth section " that the proceedings to enforce the lien created by this act shall be by bill in equity.   *   *   *   If judgment be rendered for the complainant, the court shall decree the sale of said land and premises, and shall declare the proper distribution of the fund arising from such sale, and if upon sale the proceeds be insufficient to pay all liens under this act, they shall stand as a judgment against the party who incurred the debt, if he be made or become a party to the suit, but not otherwise; and such judgment shall bear interest, and have the same force and effect, and be enforced in the same manner as in cases of judgment at law."

This would seem to contemplate the rendition of a judgment upon the claim, ascertaining its validity and the amount which the complainant is entitled to recover, being the equivalent of a personal judgment, before there is any order for a sale; and it would seem not to contemplate any new judgment or decree after the sale, in the case of the inadequacy of the proceeds to satisfy the claim, but that the adjudication previously made should *stand* as a personal judgment to be enforced, as at law, against any other property of the debtor.   A subsequent specific adjudication of the amount remaining due after the determination of the amount of the available proceeds of sale, would not, of course, be improper, and might be very desirable.   But what we decide is that, in a case like the present, its omission is not an omission of something essential to the validity of the proceedings.

The authorities on this point are not numerous, and naturally not many can be found.   Two cited by the appellee tend to support his contention.   They are *Decker* v. *O'Brien*, 1 App. Div. (N. Y.) 81, and *Baptist Church* v. *Andrews*, 87 Ill. 172.   It is unnecessary to review them here, since the point under consideration is one of local practice under local law.

Assuming that the decree of May 27, 1895, was a final adjudication between the appellant and the appellee for the purpose of the present proceedings, it is not claimed that the course pursued by the appellee to revive and enforce it, was not proper. No objection is made in that regard, and none could validly be made.

We are of opinion that the order or decree appealed from was right and proper, and that it should be *affirmed, with costs. And it is so ordered.*